**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE, DIVISION**

MARIA PARSONS and MICHAEL PARSONS,
MARY ANN JONES and JAMES ARTHUR
JONES, SR., SHANTELL SHAMEA JONES,
Individually, and as the Parent and Natural
Guardian of CARLOS UDAE STEPHENSON,
AARON JONES STEPHENSON, and OZIAH
CARSON JONES, Minor Children, SANDRA
WATTS KENNEDY and KEVIN KENNEDY,
Individually, and as the Parents and Natural
Guardians of MURIELLE KEELY KENNEDY, a
Minor Child, and FARINDA OSTEEN,
Individually and on Behalf of a Class of Persons
who are Similarly Situated,

       Plaintiffs,

v.                                                                       CASE NO. 1:10-cv-00071-MP-GRJ

KOPPERS INC., f/k/a KOPPERS INDUSTRIES,
INC., CABOT CORPORATION, and BEAZER
EAST, INC.

       Defendants.

**MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE
ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS AND PRAYERS FOR
RELIEF AND MEMORANDUM IN SUPPORT**

Defendants Koppers Inc. ("Koppers") and Beazer East, Inc. ("Beazer"),

respectfully move this Court to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P.

12(b)(6). While plaintiffs have filed a complaint filled with sweeping and conclusory

allegations, they fail to allege meaningful *facts* supporting each plaintiff's purported

cause of action against each defendant. Plaintiffs' boilerplate approach to pleading is the

very type of practice that the U.S. Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Further, plaintiffs' purported negligence per se claim fails for the additional reason that plaintiffs allege, in conclusory fashion, violations of statutes that are designed to protect the general public instead of a particular class of people.

Alternatively, the Court should strike plaintiffs' class action allegations pursuant to Fed. R. Civ. P. 12(f) for failing to file a motion for class certification within ninety days of filing this action, as required by Local Rule 23.1(B).  The Court should likewise strike plaintiffs' requests for the creation of comprehensive property remediation and medical monitoring programs.

Defendants submit the following memorandum of law in support of this motion.

## MEMORANDUM OF LAW

## INTRODUCTION AND SUMMARY

In this putative class action, a disparate group of alleged property owners, tenants and minors purport to assert nuisance, trespass, negligence, negligence per se, and strict liability claims based on the alleged emission of chemicals and dust during and after commercial wood treatment and charcoal/wood oil production operations conducted at a Superfund site ("the Site") that has been monitored and regulated by the U.S. Environmental Protection Agency for decades.  Plaintiffs have named three defendants –

Koppers, Beazer and Cabot Corporation[1] – each of whom owned and operated a portion of the Site at different times and conducted different operations.

Plaintiffs do not allege that they have suffered any personal injury. Rather, plaintiffs seek damages for one or more of the following: Diminished property value, loss of use and enjoyment of property, annoyance and inconvenience, and stigma. The complaint is fundamentally deficient on several grounds. As the factual predicate for each claim, plaintiffs merely allege, in generic and conclusory fashion, that all defendants' operations at the Site "were conducted in such a fashion as to cause and/or allow . . . toxic and dangerous substances, contaminants, and hazardous materials . . . to leave the Site and enter upon and into the" alleged class affected area. (Doc. 1 at ¶ 19). Plaintiffs do not allege <u>any</u> facts regarding how each defendant's conduct was wrongful, when that conduct occurred, or how it impacted each plaintiff or his property. Rather, the complaint treats all defendants as the same. Plaintiffs also fail to allege whether and how they or their respective properties were impacted by operations at the Site (if at all) or, for those plaintiffs who do not own property, what facts purportedly give rise to any claim for relief. The complaint does not describe how plaintiffs were harmed, when that alleged harm occurred, or what caused the alleged harm. Although the complaint refers to alleged testing of indoor dust at properties located within the "class affected area," the

---

[1] Koppers and Beazer received notice immediately before filing this motion that plaintiffs may voluntarily dismiss Cabot Corporation from this lawsuit. If plaintiffs did so, it would not alter their pleading obligations under *Twombly* and *Iqbal* to allege facts supporting their purported claims against each of the remaining defendants. Regardless of whether plaintiffs withdraw their claims against Cabot, their allegations continue to lump together all defendants, and that pleading deficiency remains irrespective of any strategic decision to drop one of the defendants from this suit.

complaint fails to allege that plaintiffs' properties were tested or even to identify the location of the properties tested.

Plaintiffs' allegations thus fail to satisfy the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*. Further, plaintiffs' purported negligence per se claim fails for the additional reason that plaintiffs allege, in conclusory fashion, violations of statutes that were designed to protect the general public instead of a particular class of people. For all these reasons, the Court should dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively, the Court should strike two groups of allegations pursuant to Fed. R. Civ. P. 12(f). First, paragraphs 1-2, 11-13 and 41-48 of the complaint, and paragraphs A-C of plaintiffs' request for relief, should be stricken pursuant to Local Rule 23.1(B), which required plaintiffs to file a motion for class certification within ninety days of filing this action. More than 150 days have passed, and plaintiffs have failed to move for class certification. Plaintiffs' inattention to this Court's rules demonstrates they are not adequate class representatives. This Court should follow the lead of other courts and strike plaintiffs' class allegations.

Second, the Court should strike plaintiffs' requests for the creation of comprehensive property remediation and medical monitoring programs. Without alleging a single fact suggesting that they have suffered irreparable harm or lack an adequate remedy at law, plaintiffs ask for an ongoing fund from which area residents apparently would make withdrawals to "remediate" properties. (Doc. 1 at 17, ¶ D(1)). The complaint offers no allegations describing or suggesting how this fund would be

administered, under what circumstances it would be used, or why the named plaintiffs – who are suing for damages – would be entitled to it.  Further, the complaint's prayer for relief includes one sentence asking for a comprehensive medical monitoring program. (Doc. 1 at 17, ¶ D(2)).  Plaintiffs do not, however, allege any facts to support such relief – such as allegations of fact about exposure to proven hazardous chemicals caused by defendants' negligence, significantly increased risk of developing specific diseases, or the existence of medical monitoring procedures, beyond ordinary medical treatment, that would be reasonably necessary for early detection.  In short, plaintiffs have not alleged sufficient facts to maintain claims for injunctive relief, and plaintiffs' request for that relief should be stricken.

## ARGUMENT

A.  **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THEIR COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).**

   1.  **Applicable pleading standard.**

   Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, a complaint could not be dismissed for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Twombly* "retired" *Conley's* "no set of facts test" and emphasized that the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, the plaintiff must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Court re-emphasized that "[a] claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added). Complaints must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The mere possibility that a defendant acted unlawfully, or the existence even of factual allegations that are consistent with the defendant's liability, are insufficient to survive a motion to dismiss. *Id.* And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Only where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *see also*, *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009).

To state claims for strict liability, negligence, nuisance and trespass in the context of an action for environmental contamination, a plaintiff must allege specific facts showing that the defendant caused physical harm to his/her property. A plaintiff cannot state such claims merely by alleging that his/her property has decreased in value. *St. Joe Co. v. Leslie*, 912 So. 2d 21, 24-25 (Fla. Dist. Ct. App. 2005). Consistent with this approach, while considering a claim for alleged property damage and personal injuries arising from radiation exposure, this Court recently confirmed that pleadings which generically allege exposure, without any specific facts regarding the level of the plaintiff's exposure or manner in which the defendant's conduct caused the exposure, fail

the *Twombly* and *Iqbal* standards.  *See Calhoun v. U.S.*, No. 3:09-cv-268/MCR/MD, 2010 WL 3277652, at *13-15 (N.D. Fla June 30, 2010).

> **2.**    **Plaintiffs fail to allege any facts regarding the nature of each defendant's alleged misconduct or the resultant harm suffered by plaintiffs.**

Plaintiffs purport to seek relief against multiple defendants, each of whom owned a portion of the Site at different times and conducted different operations during its period of ownership.    Despite these important distinctions in each defendant's involvement with the Site, plaintiffs lump all defendants together and make no attempt to differentiate the nature of their alleged claims against each defendant.   For example, plaintiffs generically allege that defendants, "[a]t times relevant hereto . . . owned, acquired, managed, and/or operated . . . wood treatment and/or charcoal/wood oil production operations and related and subsequent operations and activities at the Site." (Doc. 1 at ¶¶ 14-16).   Plaintiffs further allege, without providing any details as to each defendant's alleged misconduct, that defendants' operations "were conducted in such a fashion as to cause and/or allow . . . toxic and dangerous substances, contaminants, and hazardous materials . . . to leave the Site and enter upon and into the Class Affected Area."   (Doc. 1 at ¶ 19).   Plaintiffs fail to provide any additional allegations regarding the nature of each defendant's allegedly wrongful conduct.

Plaintiffs also fail to allege any facts suggesting that they have suffered property damage or any other injury – such as facts showing that they and their respective properties were physically impacted by chemical emissions from the Site.   The complaint fails to identify the chemicals to which plaintiffs and/or their properties purportedly were

exposed, the concentration of those exposures compared to natural background levels in the environment, and the manner in which those exposures occurred.  Instead, plaintiffs merely allege that an unspecified "sample of residences in the Class Affected Area" was tested in January 2010, and they further allege that samples of indoor household dust taken during that testing contained elevated dioxin concentrations.  (Doc. 1 at ¶¶ 20-21). There is no allegation that *plaintiffs'* properties were tested.  Absent specific factual allegations that plaintiffs and their respective properties have been physically affected by a specific defendant during the time that plaintiffs owned or resided on those properties, plaintiffs cannot state claims for strict liability, negligence, negligence per se, nuisance or trespass.

Since the *Twombly* and *Iqbal* decisions, several federal courts have concluded that pleadings which collectively reference "defendants," and do not allege facts to support a claim of injury, fail the *Twombly* and *Iqbal* standards.  In this case, the complaint does not set forth sufficient factual detail describing how and when each of the defendants allegedly caused harm to plaintiffs.  Consequently, plaintiffs have failed to comply with *Twombly* and *Iqbal*, and the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

For example, in *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159 (S.D. Fla. 2009), the court dismissed negligence and strict products liability claims because the plaintiffs made "no individualized allegations" against each defendant and, therefore, failed to allege how each defendant's alleged conduct harmed them.  *Id.* at 1162-63.  *See also Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (noting that, "[g]iven the complaint's use of

either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding plaintiff's undifferentiated allegations concerning "defendants" did not comply with *Twombly* and *Iqba*"); *In re Travel Agent Comm'n Antitrust Lit.*, 583 F.3d 896, 905 (6th Cir. 2009) (holding plaintiffs' "vague allegations" about "defendants" or "defendants' executives" did not comply with *Twombly* and failed to give adequate notice of each defendant's alleged misconduct); *Premier Assocs., Inc. v. EXL Polymers, Inc.*, No. 1:08-cv-3490-WSD, 2010 WL 2838497, at *7 (N.D. Ga. July 19, 2010) (dismissing claim when claimant failed to identify damaged property with sufficient detail); *Voggenthaler v. Md. Square, LLC*, No. 2:08-cv-1618-RCJ-GWF, 2010 WL 2998253, at *5-6 (D. Nev. July 22, 2010) (dismissing claim because plaintiff failed to allege sufficient facts showing harm from defendant's conduct); *Farash v. Cont'l Airlines*, 337 Fed. Appx. 7, 9 (2d Cir. 2009) (holding plaintiff failed to state negligence claim because he did not specify "in what manner he was injured [and] how the [defendant] was negligent").

As in those cases, plaintiffs here make no effort to delineate the nature of each defendant's alleged harmful conduct and its alleged impact on their respective properties. Even construed in the most favorable light toward plaintiffs, the complaint merely alleges that each of the defendants owned and operated a portion of the Site at some point, and chemicals allegedly migrated from the Site at some unspecified time and in some unspecified manner onto properties located within a two mile radius of the Site.  These

allegations fall well short of the *Twombly* and *Iqbal* pleading standards, as they fail to specify the nature of each defendant's alleged misconduct or indicate when that alleged misconduct may have occurred or impacted each plaintiff.  Accordingly, the Court should dismiss the Complaint.

### 3.    Plaintiffs fail to state claims for negligence per se.

Plaintiffs' negligence per se claim relies on unspecified violations of the Florida Water Quality Assurance Act ("WQAA") and Air and Water Pollution Act ("AWPA"). (Doc. 1 at ¶ 58).  Plaintiffs' reliance on those statutes is misplaced.  The WQAA and AWPA are designed to protect the environment and general public in the State of Florida rather than a particular class of people of which plaintiffs claim to be members. Therefore, plaintiffs fail to state a claim for negligence per se, and the Court should dismiss that claim.

In Florida, a statutory violation constitutes negligence per se in only two narrow circumstances:  (1) The statute is designed to protect a particular class of persons who are unable to protect themselves; or (2) the statute establishes a duty to take precautions to protect a particular class of persons from a particular type of harm.  Any other statutory violation constitutes mere evidence of negligence.  *deJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973).  Accordingly, when a plaintiff alleges that the defendant violated a statute designed to protect the general public, rather than a particular class of people, he cannot maintain a claim for negligence per se based on that violation. *See, e.g.*, *Chevron USA, Inc. v. Forbes*, 783 So. 2d 1215, 1219-20 (Fla. Dist. Ct. App. 2001).

The WQAA and AWPA are not designed to protect a particular class of people. Instead, those statutes are designed to protect the general public.  When it enacted the WQAA, which aims to preserve surface and ground waters in the State of Florida, the Florida legislature declared that "[s]pills, discharges, and escapes of pollutants . . . and hazardous substances . . . pose threats of great danger and damage to the environment of the state, to citizens of the state, and to other interests deriving livelihood from the state." FLA. STAT. § 376.30(2)(b) (2010).  When it enacted the AWPA, the legislature similarly declared that "pollution of the air and waters of this state constitutes a menace to public health and welfare" and specifically stated "the provisions of this act are enacted in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state."  FLA. STAT. § 403.021(1),(5).

Because the WQAA and AWPA are designed to protect the general public, plaintiffs cannot rely on alleged violations of those statutes to state a claim for negligence per se.  Plaintiffs have not identified any other statutory authority which supports such a claim.  The Court should dismiss plaintiffs' negligence per se claim.

**B.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH LOCAL RULE 23.1(B).**

Plaintiffs filed this action on April 20, 2010.  Pursuant to Local Rule 23.1(B), plaintiffs were required to move for class certification within ninety days after filing the complaint.  *See* N.D. Fla. Loc. R. 23.1(B).  More than 150 days after filing this action, plaintiffs have failed to move for class certification.  Consequently, the Court should strike plaintiffs' class allegations.

11

This result is supported by decisions from this District. For example, in *Jones v. Hartford Ins. Co.*, 243 F.R.D. 694 (N.D. Fla. 2006), the plaintiffs filed their complaint on October 14, 2005 and moved for class certification 161 days later. *Id.* at 694. In the interim, the plaintiffs filed an amended complaint, ostensibly in an effort to reset the 90-day deadline set forth in Local Rule 23.1(B). *Id.* at 695. The court rejected this tactic, stating

> The plain language of Local Rule 23.1(B) is clear and unambiguous. The rule commands that the motion for class determination must be filed within ninety days after filing a complaint, not after filing a subsequent amended complaint. To permit an amended complaint to reset the ninety day deadline would frustrate the purpose of Fed. R. Civ. P. 23(c)(1)(A) which requires the court to determine at 'an early practicable time . . . whether to certify the action as a class action.'

*Id.* The Court further noted that the plaintiffs' failure to comply with Local Rule 23.1(B) raised questions about their ability to "fairly and adequately protect the interests of the class," as required by Fed. R. Civ. P. 23(a)(4). *Id.* at 696-97. Accordingly, the court struck the plaintiffs' belated motion for class certification and all class allegations set forth in the amended complaint. *Id.* at 697. *See also*, *Gonzales v. Asset Acceptance, LLC*, 308 Fed. Appx. 429, 430 (11th Cir. 2009) (recognizing district court's authority "to dismiss an action for failure to comply with local rules"); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.38 (11th Cir. 2003) (recognizing district court's authority to sanction plaintiffs for noncompliance with local rules); *Seyboth v. Gen. Motors Corp.*, No. 8:07-cv-2292-T-27TBM, 2008 WL 1994912, at *2 (M.D. Fla. May 8, 2008) (striking class allegations for failure to comply with local rule); *Williams v.*

*S. Bell Tel. Co.*, No. 77-1895-CIV-WMH, 1978 WL 73, at *3 (S.D. Fla. April 4, 1978) (same).

Plaintiffs failed to comply with Local Rule 23.1(B).  This Court should strike all class allegations in the complaint, as other courts in this District and elsewhere in the Eleventh Circuit have similarly done.

C. **PLAINTIFFS' REQUEST FOR THE CREATION AND FUNDING OF A PROPERTY REMEDIATION PROGRAM SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).**

Fed. R. Civ. P. 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and a prayer for relief that is not available under the applicable law is a proper subject for a motion to strike.  FED. R. CIV. P. 12(f); *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009).

Plaintiffs seek money damages in this action.  They claim that the amount in controversy exceeds five million dollars.  (Doc. 1 at ¶ 7).  Despite their request for millions of dollars in alleged damages, plaintiffs also request the Court to re-write Florida law by granting injunctive relief which would require defendants to create and fund a comprehensive property remediation program.  (Doc. 1 at 17, ¶ D(1)).  To state a claim for such injunctive relief, plaintiffs must allege, at a minimum, facts showing that they lack an adequate remedy at law and are at serious risk of continuing irreparable harm if the relief is not granted.  *Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005); *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).  Plaintiffs have not alleged facts showing either of these necessary elements.  Plaintiffs are not excused from

alleging such facts merely because they assert their claims as part of a putative class action.  Therefore, the Court should strike those requests from the complaint.

Plaintiffs' request for a property remediation program is particularly inappropriate considering the logistical and practical nightmare inherent in such a program.  Plaintiffs offer no guidance regarding the scope and mechanics of their requested relief.  For example, there are no allegations in the complaint regarding how the program would be funded, who would administer the program, who would be entitled to participate in the program, what standards would be used to determine eligibility for the program, what evidence would be necessary to prove eligibility for the program, who would be authorized to evaluate that evidence and determine whether potential participants qualify for participation, what standards would be used to determine when a qualified property has been remediated, or who would be authorized to make that determination.

Considering this limited sample of the logistical questions and complications that accompany a property remediation program, it should come as no surprise that no Florida court has recognized ongoing property monitoring as permissible relief.  In fact, the only state supreme court to address a claim for such relief has directly rejected it.  *See, e.g.*, *Carter v. Monsanto Co.*, 575 S.E.2d 342, 345-46 (W. Va. 2002) (rejecting putative class representative's request for injunction requiring chemical company and landfill owners to conduct testing to determine if the class members' property had been damaged by exposure to dioxin, holding that "there is no common law cause of action in West Virginia for property monitoring"); *State ex rel. E.I. Dupont De Nemours & Co. v. Hill*, 591 S.E.2d 318, 326-27 (W. Va. Ct. App. 2003) (following *Carter* and rejecting

plaintiffs' request for an injunction requiring defendant to test class members for chemical compounds); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 451-52 (E.D. Pa. 2000) (rejecting request to make defendants pay for testing of class members' vehicles).

Plaintiffs, in short, provide this Court with no legal justification for requiring defendants to create and fund a property remediation program. Consequently, the Court should strike their request for such equitable relief pursuant to Fed. R. Civ. P. 12(f).

**D. PLAINTIFFS' REQUEST FOR THE CREATION AND FUNDING OF A MEDICAL MONITORING PROGRAM SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).**

Plaintiffs do not affirmatively state an independent cause of action for medical monitoring. Embedded within their prayer for relief, however, plaintiffs request

> the creation, and funding by Defendants, of a comprehensive community medical monitoring program for the detection and diagnosis of and appropriate harm reduction related to the latent diseases, disorders, and other harms to health and well-being for which the Plaintiffs and Class Members are at an elevated risk as a result of exposure to toxic and dangerous substances, contaminants, and hazardous materials originating in and from the Site.

(Doc. 1 at 17, ¶ D(2)). As noted above, plaintiffs have not alleged facts showing that they are entitled to injunctive relief. Therefore, the Court should strike their request for a medical monitoring program. This request should be stricken for the additional reason that plaintiffs have not asserted a claim for medical monitoring or alleged sufficient facts that would warrant such relief.

To state a claim for medical monitoring, plaintiffs must plead facts showing: (1) exposure to a proven hazardous substance at greater than normal background levels; (2) the exposure was caused by the defendant's negligence; (3) the plaintiff has a

significantly increased risk of developing a serious latent disease as a proximate result of the exposure; (4) a monitoring procedure exists that makes the early detection of the disease possible; (5) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (6) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106-07 (Fla. Dist. Ct. App. 2000), *rev. denied*, 780 So. 2d 912 (Fla. 2001).

The complaint lacks any meaningful factual allegations regarding plaintiffs' individual exposures and injuries. Plaintiffs do not allege any facts regarding their own purported exposures to "proven hazardous substances" or the concentrations of those exposures compared to normal background levels. Plaintiffs also do not allege any facts regarding the manner in which those purported exposures occurred or identify any negligent act of any defendant which allegedly caused their individual exposures. Finally, plaintiffs do not advocate a monitoring regime that would be any different from ordinary medical treatment or reasonably necessary for early detection of specific diseases. Insofar as plaintiffs have included in the complaint allegations which relate to a medical monitoring claim, those allegations constitute nothing more than legal conclusions which recite the elements for medical monitoring under Florida law. As specifically recognized by the Supreme Court in *Twombly* and *Iqbal*, such allegations are insufficient. *See, e.g.*, *Suarez v. Playtex Prods., Inc.*, No. 08 C 2703, 2009 WL 2212315, at *4 (N.D. Ill. July 24, 2009) (holding plaintiffs not entitled to medical monitoring absent allegations of actual exposure and showing that monitoring is necessary). *See also*

*Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 661-62 (M.D. Fla. 2001); *Zehel-Miller v. Astrazenaca Pharm. LP*, 223 F.R.D. 659, 664 (M.D. Fla. 2004); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 270-73 (S.D. Fla. 2003).

In addition, Florida law is by no means settled that medical monitoring is a cognizable cause of action. The Florida Supreme Court has never spoken on the issue. Given this lack of guidance from the Florida Supreme Court, plaintiffs' failure to plead meaningful facts in support of this claim for relief is even more problematic. Even if the Florida Supreme Court were to recognize this cause of action, defendants submit that Florida law at least would require more particularized pleading than what plaintiffs allege here.

Because plaintiffs have not alleged sufficient facts which support their request for a medical monitoring program, the Court should strike their request for such relief from the complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint or, in the alternative, strike plaintiffs' class allegations and request for injunctive relief. Defendants further request any further and alternative relief that the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, the undersigned hereby certifies that counsel for defendants, Koppers Inc. and Beazer East, Inc., has conferred with counsel for plaintiffs in a good faith attempt to resolve by agreement the issues raised in defendants' Motion to

Dismiss Class Action Complaint or, in the alternative, to Strike Class Allegations and

Prayers for Relief. During the course of said conference, counsel did not reach

agreement regarding any of the issues raised in defendants' motion.

**REQUEST FOR ORAL ARGUMENT**

Koppers and Beazer hereby request oral argument on the issues raised in this

motion. Defendants estimate that 45 minutes will be required for oral argument.

Date: September 22, 2010

Respectfully submitted,

s/ Dennis P. Waggoner
Benjamin H. Hill, III (FBN 094585)
bhill@hwhlaw.com
Dennis P. Waggoner (FBN 509426)
dwaggoner@hwhlaw.com
HILL, WARD & HENDERSON P.A.
101 East Kennedy Blvd., Suite 3700
P.O. Box 2231
Tampa, FL 33602
Phone: (813) 221-3900
Fax: (813) 221-2900

**OF COUNSEL:**
Robert L. Shuftan (ILBN 3124475)
*Northern District Bar application to be submitted*
shuftan@wildman.com
David A. Kanter (ILBN 6187653)
*Northern District Bar application to be submitted*
kanter@wildman.com
Brent R. Austin (ILBN 6220501)
*Northern District Bar application to be submitted*
austin@wildman.com
Paul K. Freeborn (ILBN 6277489)
*Northern District Bar application to be submitted*
freeborn@wildman.com
Megan C. Millirons (ILBN 6290249)
*Northern District Bar application to be submitted*
millirons@wildman.com
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, Suite 2800
Chicago, IL 60606
Phone: 312-201-2000
Fax: 312-201-2555

ATTORNEYS FOR DEFENDANTS
KOPPERS INC. and BEAZER EAST,
INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2010 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

s/ Dennis P. Waggoner