# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

---

MARIA PARSONS and MICHAEL PARSONS,
MARY ANN JONES and JAMES ARTHUR JONES, SR.,
SHANTELL SHAMEA JONES, Individually,
and as the Parent and Natural Guardian of
CARLOS UDAE STEPHENSON, AARON JONES STEPHENSON,
and OZIAH CARSON JONES, Minor Children,
SANDRA WATTS KENNEDY and KEVIN KENNEDY,
Individually, and as the Parents and Natural Guardians
of MURIELLE KEELY KENNEDY, a Minor Child; and
FARINDA OSTEEN, all individually and
on Behalf of a Class of Persons who are Similarly Situated,

*Plaintiffs*,

v.                                          CASE NO.: 1:10-cv-00071-MP-GRJ

KOPPERS INC. f/k/a
KOPPERS INDUSTRIES, INC.,
 BEAZER EAST, INC., f/k/a KOPPERS
COMPANY, INC., KOPPERS HOLDINGS
INC., and BEAZER LIMITED

*Defendants.*

---

## AMENDED CLASS ACTION COMPLAINT
## JURY TRIAL DEMANDED

---

Plaintiffs, MARIA PARSONS and MICHAEL PARSONS, MARY ANN JONES and

JAMES ARTHUR JONES, SR., SHANTELL SHAMEA JONES, individually and as the Parent

and Natural Guardian of CARLOS UDAE STEPHENSON, AARON JONES STEPHENSON,

and OZIAH CARSON JONES, Minor Children, SANDRA WATTS KENNEDY and KEVIN

KENNEDY, individually, and as the Parents and Natural Guardians of MURIELLE KEELY

KENNEDY, a Minor Child, and FARINDA OSTEEN, bring this action on their own behalf, and

on behalf of a Class of similarly situated persons as defined below against Defendants

KOPPERS INC. f/k/a KOPPERS INDUSTRIES, INC., and BEAZER EAST, INC.,   f/k/a

KOPPERS COMPANY, INC., KOPPERS HOLDINGS INC., and BEAZER LIMITED and state

as follows:

## INTRODUCTION & BACKGROUND

1.      This is a class action arising from conduct by the Defendants -- and/or by their

predecessors or other entities whose conduct in connection with the "Cabot Koppers Superfund

Site" created conditions and circumstances for which the Defendants are legally accountable and

responsible – which conduct caused and/or allowed toxic and dangerous substances,

contaminants, and hazardous materials to leave the Site and contaminate the hereinafter-defined

"Class Affected Area."

2.      Plaintiffs bring this action individually, and as representatives of, and on behalf

of, a class of persons (hereinafter, the "Class Members") who are past or present residents within,

or own real property located within, the Class Affected Area, who have been and/or are being

subjected to legal injury by exposure to and/or real property contamination from toxic and

dangerous substances, contaminants, and hazardous materials.

3.      The "Cabot Koppers Superfund Site" (hereinafter "the Site") is an area of

approximately 140 acres, located on NW 23d Avenue in the City of Gainesville, in Alachua

County, Florida, that is, and/or has been, the location of a commercial wood treatment operation

and a commercial charcoal/wood oil production operation and related operations and activities.

4.      Poor waste handling practices by KOPPERS INC. and its predecessors resulted in contaminated ground water and soil, and as set for the herein, have caused, or will cause, serious personal injury and property damage to the surrounding residents and area.

5.      The "Class Affected Area" is the geographic area surrounding the Site, including numerous residences where people of all ages live.  The Site includes the residences of many children who are especially susceptible to the toxic and dangerous contaminants described herein.

6.      The Class Affected Area is the geographic area within approximately a two-mile radius from the Site, but not including the Site itself.  This area is subject to modification according to the evidence as the instant case progresses.

7.      The Plaintiffs reside and/or own real property within the Class Affected Area.

## **PLAINTIFFS**

8.      Plaintiffs are residents of, and/or owners of real property in the city of Gainesville, Alachua County, in the State of Florida.

9.      Plaintiffs MARIA PARSONS and MICHAEL PARSONS reside and own real property in Gainesville, Florida, at 439 NW 37th Avenue; and they own other real property at 514 NW 37th Avenue.  Both properties are located within the Class Affected Area.

10.      The past, present, and (if not corrected and abated) future contamination in the Class Affected Area, as set forth herein, with toxic and dangerous substances, contaminants, and hazardous materials originating from the Site has proximately caused and in the future (if not abated) will cause Plaintiffs MARIA PARSONS and MICHAEL PARSONS to wrongfully suffer unreasonable harm, conditions, and/or legal injuries, to-wit: (1) an elevated risk of latent

disease and other harm to the health and well-being of these Plaintiffs; and/or (2) injury and harm to the market value, use value, and/or beneficial enjoyment/value of their residence and real property, and consequent annoyance and inconvenience, and stigma.

11.    Plaintiffs MARY ANN JONES and JAMES ARTHUR JONES, SR., reside at 3119 NW 4th St. in Gainesville, Florida, within the Class Affected Area.

12.    The past, present, and (if not corrected and abated) future contamination in the Class Affected Area, as set forth herein, with toxic and dangerous substances, contaminants, and hazardous materials originating from the Site has proximately caused and in the future (if not abated) will cause Plaintiffs MARY ANN JONES and JAMES ARTHUR JONES, SR., to wrongfully suffer unreasonable harm, conditions, and/or legal injuries, to-wit: (1) an elevated risk of latent disease and other harm to the health and well-being of these Plaintiffs; and/or injury and harm to the beneficial enjoyment of their residence, and consequent annoyance and inconvenience.

13.    Plaintiff SHANTELL SHAMEA JONES, daughter of Plaintiffs MARY ANN JONES and JAMES ARTHUR JONES, SR., is the Parent and Natural Guardian of CARLOS UDAE STEPHENSON (age 6), AARON JONES STEPHENSON (age 3), and OZIAH CARSON JONES (age 5 months), minor children; they all reside at 3119 NW 4th St. in Gainesville, Florida, within the Class Affected Area.

14.    The past, present, and (if not corrected and abated) future contamination in the Class Affected Area, as set forth herein, with toxic and dangerous substances, contaminants, and hazardous materials originating from the Site has proximately caused and in the future (if not abated) will cause Plaintiffs SHANTELL SHAMEA JONES and her three minor children CARLOS UDAE STEPHENSON, AARON JONES STEPHENSON, and OZIAH CARSON

JONES to wrongfully suffer unreasonable harm, conditions, and/or legal injuries, to-wit: (1) an elevated risk of latent disease and other harm to the health and well-being of these Plaintiffs; and/or injury and harm to the beneficial enjoyment of their residence, and consequent annoyance and inconvenience.

15.    Plaintiffs SANDRA WATTS KENNEDY and KEVIN KENNEDY reside at 514 NW 31st Lane in Gainesville, Florida, within the Class Affected Area.  They are the parents and natural guardians of MURIELLE KEELY KENNEDY, age 12, a minor child who resides with them.

16.    The past, present, and (if not corrected and abated) future contamination in the Class Affected Area, as set forth herein, with toxic and dangerous substances, contaminants, and hazardous materials originating from the Site has proximately caused and in the future (if not abated) will cause Plaintiffs SANDRA WATTS KENNEDY and KEVIN KENNEDY, and their minor child MURIELLE KEELY KENNEDY, to wrongfully suffer unreasonable harm, conditions, and/or legal injuries, to-wit: (1) an elevated risk of latent disease and other harm to the health and well-being of these Plaintiffs; and/or injury and harm to the beneficial enjoyment of their residence, and consequent annoyance and inconvenience.

17.    Plaintiff FARINDA OSTEEN resides and owns real property at 437 NW 29th Ave., Gainesville, Florida, within the Class Affected Area.

18.    The past, present, and (if not corrected and abated) future contamination in the Class Affected Area, as set forth herein, with toxic and dangerous substances, contaminants, and hazardous materials originating from the Site has proximately caused and in the future (if not abated) will cause Plaintiff FARINDA OSTEEN to wrongfully suffer unreasonable harm, conditions, and/or legal injuries, to-wit: (1) an elevated risk of latent disease and other harm to

the health and well-being of this Plaintiff; and/or (2) injury and harm to the market value, use value, and/or beneficial enjoyment/value of her residence and real property, and consequent annoyance and inconvenience, and stigma.

### DEFENDANT KOPPERS INC., F/K/A KOPPERS INDUSTRIES, INC

19.     Defendant, KOPPERS INC. f/k/a KOPPERS INDUSTRIES, INC. (hereinafter referred to as "KOPPERS INC."), is a Pennsylvania corporation with its principal place of business located at 1750 Koppers Bldg, 436 7th Avenue, Pittsburgh, PA 15219-1800.

20.     At all times relevant hereto, Defendant KOPPERS INC. formerly known as KOPPERS INDUSTRIES, INC. acquired, managed, and/or operated the aforesaid wood treatment operations at the Site and related and subsequent operations and activities at the Site and is responsible for the contamination of the Site and Class Affected Area.

21.     In 1988, KOPPERS INC. became a wholly owned subsidiary of Defendant KOPPERS HOLDINGS due to a stock conversion into shares of common and preferred stock of Defendant KOPPERS HOLDINGS.

22.     KOPPERS INC. was formed in 1988 to acquire the assets of Defendant BEAZER EAST.

### DEFENDANT BEAZER EAST F/K/A KOPPERS COMPANY, INC.

23.     Defendant, BEAZER EAST, INC. f/k/a Koppers Company, Inc. (hereinafter referred to as "BEAZER EAST"), is a Delaware corporation with its principal place of business located at One Oxford Centre 3000, Pittsburgh, PA 15219.

24.     Defendant BEAZER EAST obtained ownership of the Site on or about March 30, 2010.

25.     Before March 30, 2010, BEAZER EAST undertook the duty to clean the contamination of the Site.

26.     Upon information and belief, Defendant BEAZER EAST, under the terms of an asset purchase agreement with Defendant KOPPERS HOLDINGS, assumed the liability for and indemnified Defendant KOPPERS HOLDINGS for certain clean-up liabilities for contamination on the Site, including contamination in the Class Affected Area.

27.     Upon information and belief, In July 2004, Defendant Koppers Holdings entered into an agreement with Beazer East to amend a December 29, 1988 asset purchase agreement to provide, among other things, for the continued tender of pre-closing environmental liabilities to Beazer East for the Site.

## DEFENDANT KOPPERS HOLDINGS

28.     Defendant KOPPERS HOLDINGS INC. (hereinafter KOPPERS HOLDINGS), is a Pennsylvania corporation with its principal place of business located at 436 7th Avenue, Pittsburgh, PA 15219.

29.     KOPPERS HOLDINGS was formed in 2004 as holding company for Defendant KOPPERS, INC.

30.     KOPPERS HOLDINGS does not have any operations independent of Defendant KOPPERS, INC., except as to certain administrative matters.

31.     Defendant KOPPERS HOLDINGS acquired the assets and liabilities of Defendant KOPPERS INC. and is therefore responsible for all liability imposed on Defendant KOPPERS INC. as a result of the claims made in this Complaint.

## DEFENDANT BEAZER LIMITED

32.     Upon information and belief, Defendant, BEAZER LIMITED, is a foreign corporation with its principal place of business in England.

33.     BEAZER LIMITED is the parent company of BEAZER EAST.

34.     BEAZER LIMITED unconditionally guaranteed BEAZER EAST'S performance of an indemnity for environmental and other liabilities relating to KOPPERS COMPANY INC.'s (BEAZER EAST) operations, environmental and other liabilities, purchased from BEAZER EAST by KOPPERS HOLDINGS.  Upon information and belief, the aforementioned guarantee of indemnity by BEAZER LIMITED includes the liabilities relating to the affected Site and the Class Affected Area.

35.     The Court has personal jurisdiction over Defendant BEAZER LIMITED pursuant federal law, Florida's Long-Arm Statute and due process because BEAZER LIMITED engaged in substantial and not isolated activity in Florida, and Alachua County by entering into a contract to unconditionally guarantee BEAZER EAST'S performance of an indemnity for environmental and other liabilities relating to KOPPERS COMPANY INC.'s (BEAZER EAST) operations, environmental and other liabilities in the State of Florida and Alachua County.

## JURISDICTION AND VENUE

36.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction), in that (i) there is complete diversity (Plaintiffs are citizens of Florida; and Defendants are domiciled in Pennsylvania and Delaware, and, in all events, not Florida, and, to the extent pertinent, maintain their principal places of business in Pennsylvania, and in all events, not Florida); (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs; and (iii) there are 100 or more members of the proposed Plaintiff class.

37.    Venue lies in this District, pursuant to 28 U.S.C. §1391, because Plaintiffs reside in this Judicial District and/or own real property located in this Judicial District, and a substantial part of the conduct and events giving rise to Plaintiffs' and the Class Members' claims occurred in this Judicial District.

38.    This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between all Plaintiffs and Class Members and Defendants and the amount in controversy exceeds $75,000.00.

## CLASS ACTION ALLEGATIONS

39.    Each Defendant participated in the wrongful acts herein.  Defendants also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

40.    At all times relevant hereto, Defendants acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

41.    At times relevant hereto, Defendant BEAZER EAST – and/or its predecessor(s) or other entities for whose conduct and circumstances created thereby Defendant BEAZER EAST is legally liable and responsible -- owned, acquired, managed, and/or operated the aforesaid wood treatment and related and subsequent operations and activities at the Site.

42.    Upon information and belief, Defendant BEAZER EAST has entered into a legal arrangement with Defendants KOPPERS INC. and KOPPERS HOLDINGS and possibly other entities whereby BEAZER EAST has assumed a financial, legal, managerial, and/or operational responsibility and liability for environmental and toxic or hazardous conditions and

consequences associated with the Site, including the alleged wrongful contamination of the Class Affected Area complained of herein; and, upon information and belief, there has been no separate and/or distinct conduct by BEAZER, as opposed to by KOPPERS, and vice versa, with respect to the creation of said contamination as described herein.

43.     At all times relevant hereto, Defendants have caused and/or allowed, toxic and dangerous substances, contaminants, and hazardous materials, to leave the Site and contaminate residences in the Class Affected Area.  Those toxic and dangerous substances, contaminants, and hazardous materials, include, but not limited to the following:

(a)     dioxin and dioxin-like compounds which are associated with Pentachlorophenol, a wood preservative employed at relevant times at the Site. Pentachlorophenol and dioxin and dioxin-like compounds are toxic and dangerous substances. More specifically, the term "dioxin" refers to a family of compounds typified by benzene rings with a single or double oxygen bond with associated chlorine atoms in different arrangements which allow for the identification of approximately 70 congeners of "dioxin" and numerous other compounds generally referred to in the scientific literature as "dioxin-like compounds." All dioxin and dioxin-like compounds are toxic and dangerous to human beings, with one or more dioxins and dioxin-like compounds associated with the development and promotion of cancer, endocrine disruption, central and peripheral nervous system damage, developmental delays in children, diabetes, as well as numerous other adverse health effects, most of which are permanent and lasting in nature.  **Children are particularly vulnerable and susceptible to the risks and adverse effects of exposure to dioxin and dioxin-like compounds, because of children's smaller sizes, which makes exposures relatively more potent; and because of children's developmental processes;**

(b)  arsenic and hexavalent chromium aretoxic are toxic and dangerous substances associated with one or more wood treatment modalities employed at relevant times at the Site. More specifically, arsenicals in combination with other compounds generally referred to as copper and chromate formulations with arsenic, known generally as "CCA" were employed at the Site at relevant times in connection with wood treatment operations.  These compounds are known carcinogens and are also particularly toxic and dangerous to children; and

(c)  polycyclic aromatic hydrocarbons (hereinafter "PAHs") are toxic and dangerous substances.   More specifically, among the approximately 10,000 PAHs, benzo(a)pyrene is extraordinarily toxic and dangerous to humans. Human exposure to benzo-a-pyrene is known to be associated with the following: (1)  cancer: benzo(a)pyrene, a common PAH, is known to cause lung and skin cancer in laboratory animals and is a human carcinogen; (2)  reproductive effects: reproductive problems and problems in unborn babies' development have occurred in laboratory animals that were exposed to benzo(a)pyrene and present a clear risk to humans; (3)  organ systems: lungs, liver, skin, and kidneys can be damaged by exposure are at risk for damage resulting from exposure to benzo(a)pyrene.   These compounds are also particularly dangerous to children.

44.   Upon information and belief, the aforementioned  wood treatment operations at the Site involved and utilized materials and processes that contained and/or generated the toxic and dangerous substances, contaminants, and hazardous materials described herein.

45.   The wood treatment operations and related conduct and activity at the Site were caused and/or allowed the toxic and dangerous substances, contaminants, and hazardous materials described herein to leave the Site and enter the Class Affected Area, resulting in past, current, and (if not corrected) future injurious contamination of real property from, and exposure

of residents within the Class Affected Area to, dioxin and dioxin-like compounds; and, upon belief, by arsenic, PAHs, and other toxic and dangerous substances, contaminants, and hazardous materials.

46.     The primary mechanism for the release and dispersion of toxic and hazardous substances from the Site and the consequent wrongful contamination of the Class Affected Area from wood treatment operations complained of herein has been through airborne transport from the Site.

47.     The airborne transport is as a result of the release of particulates and vapors from activities, operations, and conditions on the Site, including but not limited to the following:

    a.   particulates and vapors released from wood treatment vessels, tanks, containers, and other treatment processes;

    b.   gaseous and particulate discharges from the combustion of treated wood and other wastes;

    c.   the disturbance and airborne dispersion of dust and soil particles from drip pads, roads, and other portions of the Site that have been contaminated by toxic and hazardous substances;

    d.   all other activities, operations, and conditions that resulted in airborne transport from the Site into the Class Affected Area; and

    e.   upon information and belief, waterborne transport of toxic and hazardous materials through runoff from the Site has resulted in some off-site contamination of the Class Affected Area.

48.     Plaintiffs first became on notice of the aforesaid contamination and exposure in the Class Affected Area after testing of a sample of residences, in the Class Affected Area was

completed and the results reported in February, 2010.  Since that time, Plaintiffs real property

has been tested and the Plaintiffs' real property is contaminated.

49.     Samples taken from residences in the Class Affected Area during January, 2010,

showed levels of total dioxins and dioxin-like compounds in indoor household dust exceeding  1

part per billion.  By way of comparison, Florida Department of Environmental Protection soil

cleanup target levels for dioxin and dioxin-like compounds are set at 7 parts per *trillion*, which

means that the indoor dust sample obtained from one residence in the Class Affected Area

exceeded this soil cleanup target level by almost 1000 times.   (*See,* Exhibit 1, attached hereto,

for a complete Report of Sample Results during the January 2010, testing).

50.     The aforesaid contamination in the Class Affected Area and exposure of the

Plaintiffs and Class Members  in the normal course of their daily lives has proximately caused

and created, and in the future will create (unless corrected and abated) a significantly elevated

risk of contracting serious latent diseases, disorders, and harm to the physical health and well-

being for the Plaintiffs and Class Members, as a result of exposure to the aforesaid toxic and

dangerous substances, contaminants, and hazardous materials in the Class Affected Area.

51.     The aforesaid contamination in the Class Affected Area has proximately caused

and/or in the future will cause (unless corrected and abated) injury and harm to the Plaintiffs' and

Class Members' interests in the market value, use value, and/or beneficial enjoyment/value of

their residences and/or owned real property, and consequent annoyance, inconvenience,

diminished quality of life, and stigma.

52.     There exist reasonable and feasible methodologies of property remediation that to

a meaningful extent can detect, alleviate, remove, and/or render substantially less dangerous and

harmful the aforesaid injurious contamination of real properties in the Class Affected Area.The

Plaintiffs and Class Members' exposure to toxic and dangerous substances has been and is at greater than normal background levels and as a result of tortious, negligent, and otherwise culpable conduct for which the Defendants are liable; and as a proximate result of said exposure, the Plaintiffs and Class Members experience a significantly increased risk of contracting a serious latent disease or disorder and suffering serious physical injuries and harms; and additionally, according to contemporary scientific principles, there exist reasonably necessary monitoring, screening, and testing regimes, different from those normally recommended in the absence of such exposure, that would make possible the early detection and diagnosis of and harm reduction related to these latent diseases, disorders, and other harms to health and well-being for which the Plaintiffs and Class Members are at an elevated risk as a result of exposure to the aforesaid toxic and dangerous substances, contaminants, and hazardous materials in the Class Affected Area from and originating in the Site. Plaintiffs do not in this lawsuit seek relief or remedy for any present physical injury or disease suffered by any Plaintiff or Class Member, nor do they assert that they have necessarily received and/or currently have, in their body, dangerous levels or dosages of one or more of the aforesaid toxic substances as a result of their exposure to elevated levels of the aforesaid substances that are contaminating the environment in the Class Affected Area. Plaintiffs do assert that in their daily lives and/or persons making reasonable use of the property encounter and are exposed to the aforesaid toxic and hazardous substances at levels exceeding normal background levels and that such persons have an increased risk of receiving harmful dosages as a result of the contamination of the environment in the Class Affected Area for which Defendants are liable.

53.    Upon information and belief, each of the Defendants currently has or in the relevant past has had a legal, managerial, operational, ownership, financial, and/or controlling

relationship with, interest in, responsibility for, and/or involvement with the Site and/or operations at the Site, in such a fashion and to such a degree as to render each Defendant legally responsible, liable, and accountable for all or a portion of the claims, injuries, damages, remedies, and relief that are asserted, alleged, and sought by the Plaintiff in this action.

54.    The Defendants, and/or persons or entities for whose conduct and circumstances created thereby the Defendants are legally liable and responsible, failed to take effective action to prevent, reduce, alleviate, investigate, monitor, evaluate, assess, measure, correct, compensate for, repair, and/or remediate the aforesaid contamination in the Class Affected Area.

55.    The conduct complained of herein by the Defendants, and/or their predecessors or other entities whose conduct in connection with the Site created conditions and circumstances for which the Defendants are legally accountable and responsible, including business activities conducted at the Site, was undertaken with conscious disregard or indifference to the rights, welfare, and safety of persons and property within the Class Affected Area; and was reckless, grossly negligent, and/or intentional.

56.    Defendants, and/or persons or entities for whose conduct and circumstances created thereby the Defendants are legally liable and responsible, knew or should have known that a high degree of risk existed in the creation, use, management, storage and/or disposal of toxic and dangerous substances, contaminants, and hazardous materials as described herein; and knew or should have known that a substantial likelihood existed that harm might occur should any such substances and materials escape from the Site into the Class Affected Area.

57.    Plaintiffs have retained the undersigned counsel and are obligated to pay them reasonable attorneys' fees and costs.

58.    All conditions precedent to bringing this action have been met.

## <u>FEDERAL RULE OF CIVIL PROCEDURE 23 REQUIREMENTS</u>

**Numerosity of the Class**

59.    Plaintiffs bring this action under Federal Rules of Civil Procedure Rule 23(a) and 23(b)(1), (b)(2), and (b)(3) as a class action on behalf of themselves and all others similarly situated for the purpose of asserting the claims alleged in this complaint on a common basis.

60.     Plaintiffs bring this action individually and as representatives of and on behalf of a class of persons who are past or present residents within, or own real property located within, the Class Affected Area, who have been and/or are being legally injured by personal exposure to and/or real property contamination from toxic and dangerous substances, contaminants, and hazardous materials, in such a fashion and to such a degree according to objective criteria for such exposure and contamination so as to entitle these persons to the relief and remedies requested herein.

61.    The Class Members are so numerous as to make it impractical to bring them all before this Court.  Plaintiffs are unable to state the exact number of Class Members without further discovery**.**

**Commonality and Predominance of Common Questions of Law and Fact**

62.    There are common questions of law and fact affecting the rights of each Class Member for which common relief is sought.  The claims asserted by Plaintiffs individually and on behalf of Class Members present questions of fact or law common to the class including, *inter alia*, whether Defendants, and/or others for whose conduct Defendants are legally liable and responsible, caused and allowed, and/or failed to take effective action to prevent, reduce, alleviate, investigate, monitor, evaluate, assess, measure, correct, compensate for, repair, and/or

remediate the toxic and dangerous contamination in the Class Affected Area as described herein;

and whether said conduct entitles Plaintiffs and Class Members to the relief requested herein.

**Typicality**

63.    The claims asserted by Plaintiffs individually are typical of the other Class Members'

claims in that the other Class Members in that Plaintiffs and Class Members suffered similar

damages resulting from Defendants' single, continuing course of conduct—the failure to take

effective action to prevent, reduce, alleviate, investigate, monitor, evaluate, assess, measure,

correct, compensate for, repair, and/or remediate the toxic and dangerous contamination in the

Class Affected Area as described herein. Each class member asserts the same legal cause of

action.

**Adequacy of Representation**

64.    Plaintiffs will fairly and adequately represent and protect the interests of the Class

because (i) Plaintiffs have retained counsel experienced in the prosecution of such litigation and

counsel has the necessary resources to conduct this litigation, and counsel will adequately

represent the interests of the class; (ii) Plaintiffs and their counsel are aware of no conflicts of

interest between Plaintiffs and absent Class Members or otherwise; and (iii) Plaintiffs are

knowledgeable concerning the subject matter of this action and will assist counsel in the

prosecution of this litigation.

**Superiority**

65.    The prosecution of separate actions by individual Class Members would create a risk of

inconsistent and varying adjudications that would establish incompatible standards of conduct

for the Defendants and Class Members.  Adjudication with respect to individual Class Members

would as a practical matter be dispositive of the interests of other Class Members who are not

parties to such adjudications, thereby impairing or impeding their interests.  A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that: (i) neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action; (ii) the prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action is impracticable and would create a massive and unnecessary burden on the resources of Courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the Class; (iii) because of the disparity of resources available to Defendants versus those available to individual Class Members, prosecution of separate actions would work a financial hardship on may Class Members, and (iv) the conduct of this action as a class action conserves the resources of the parties and the Court system and protects the rights of each member of the Class and meets all due process requirements as to fairness to all parties.  A class action is also superior to maintenance of these claims on a claim by claim basis when all actions arise out of the same circumstances and course of conduct.

## COUNT I
## MEDICAL MONITORING & EQUITABLE AND INJUNCTIVE RELIEF

66.    Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein

67.    Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

68.    Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein.

69.     Plaintiffs on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that Defendants be ordered to institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect, dangers associated with the contamination in the Class Affected Site and create, fund, and support a medical monitoring program.

70.     Until contaminants at the Class Affected Site have been removed, Defendants should provide continued environmental monitoring in Plaintiffs and Class Members' homes and property.

71.     Plaintiffs and Class Members have been exposed to greater than normal background levels of the contaminants and hazardous substances in the Class Affected Area, as set forth herein, because of Defendants' activities at the Site.

72.     The contaminants and other hazardous substances set forth herein from the Site and present in the Class Affected Area from Defendants' activities at the Site, which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

73.     Plaintiffs' and Class Members' exposures were caused by the Defendant's negligence or otherwise tortious conduct.

74.     Plaintiffs and Class Members exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

75.     The method and means for diagnosing the Plaintiffs and Class Members potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the aforementioned contaminants and hazardous substances.

76.   As a proximate result of their exposure to the contaminants and hazardous substances set forth herein, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

77.   Monitoring procedures exist that makes the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

78.   The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

WHEREFORE, Plaintiffs, on behalf of all others similarly situated demand injunctive and/or equitable relief against the Defendants as follows:

a.   an Order certifying the Class and appointing Plaintiffs as Class Representatives;

b.   an order appointing Class Counsel to the represent the Class;

c.   an order and judgment requiring the necessary repairs, remediation, relocation costs, personal property replacement, establishment of environmental and medical monitoring programs;

d.   pre-judgment and post-judgment interest at the maximum rate allowable at law;

e.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

f.   the costs and disbursements incurred by Plaintiffs and Class Members in connection with this action, including reasonable attorneys' fees based on the

benefits conferred upon the Class, a common fund, statutory, and/or contractual basis;

g.   `equitable and injunctive relief;

h.   pursuant to Rule 23, Plaintiffs seek notice to Class Members of the contaminants present in the Class Affected Area, the need to have Class Members' homes and property inspected and tested, and potential health risks associated with the aforementioned hazardous and toxic substances;

i.   environmental monitoring;

j.   medical monitoring; and

k.   such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## COUNT II
## STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY

79.    Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

80.    Defendants, as the owner/operator of the Site conducted ultrahazardous activities due to the nature of the chemicals and materials utilized at the Site.  As such, Defendants are strictly liable for the consequences of their ultrahazardous activity.

81.    Defendants had a duty to exercise due care in the ownership and operation of a facility using, storing, and containing hazardous materials and was under a duty to comply with all laws and regulations relating to the treatment, storage, and disposal of the hazardous materials so as to

ensure that the treatment, storage, and disposal did not harm Plaintiffs and Class Members in the Class Affected Area.  Defendants breached their duty duties described above, by:

    a.  preventing the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area;

    b.  failing to adequately train and supervise their employees and agents with regard to proper procedures to prevent the release and spread of toxic and dangerous substances, contaminants, and hazardous materials from the Site into the Class Affected Area;

    c.  failing to adequately warn of the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area; and

    d.  otherwise failing to using reasonable care in the operation of the Site to prevent the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area.

82.    The conduct of Defendants as described above also violated Florida Air and Water Pollution Act, § 403.011, *et seq.,* Florida Statutes, and/or Florida's Water Quality Assurance Act, § 376.30, *et seq.,* Florida Statutes.

83.    As a direct and proximate result of the Defendants' acts and omissions, the hazardous waste being treated, stored, and disposed of at Defendants' facility leaked, seeped, or was carried onto and into Plaintiffs and Class Members homes and real property in the Class Affected Area seriously contaminating it.

84.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for:

the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable housing during the duration of the cleanup of the home and property; incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a.  an order certifying the case as a class action;

    b.  an order appointing Plaintiffs as the Class Representatives of the Class;

    c.  an order appointing undersigned counsel and their firms as counsel for the Class;

    d.  compensatory damages;

    e.  post-judgment interest;

    f.  an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g.  an award of taxable costs; and,

    h.  any and all such further relief as this Court deems just and proper.

## COUNT III

## **NUISANCE**

85.     Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

86.     The Defendants' tortious or wrongful acts or omissions have caused hazardous substances, as set forth herein, to enter Plaintiffs and Class Members' homes and property which has unreasonably interfered, and continues to interfere, with the Plaintiffs and Class Members' use and enjoyment of their properties, caused them potential health problems and caused them to suffer a significantly increased and elevated risk of latent diseases as described herein.

87.     Defendants' interference has impaired the rights of Plaintiffs and Class Members health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

88.     Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

89.     The interference with Plaintiffs and Class Members' use of their property caused by Defendants is substantial and is ongoing.

90.     Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiff Class Members' damages, injuries, harm, economic loss, and increased risk of harm, which they suffered and will continue to suffer

91.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are

unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable housing during the duration of the cleanup of the home and property; incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

92.     Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a.   an order certifying the case as a class action;

b.   an order appointing Plaintiffs as the Class Representatives of the Class;

c.   an order appointing undersigned counsel and their firms as counsel for the Class;

d.   compensatory damages;

e.   post-judgment interest;

f.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g.   an award of taxable costs; and,

h.   any and all such further relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENCE

93.    Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

94.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the operation of the Site.  Defendants' duty includes, but was not limited to the following:

      a.   preventing the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area;

      b.   failing to adequately train and supervise their employees and agents with regard to proper procedures to prevent the release and spread of toxic and dangerous substances, contaminants, and hazardous materials from the Site into the Class Affected Area;

      c.   failing to adequately warn of the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area; and

      d.   otherwise using reasonable care in the operation of the Site to prevent the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area.

95.    Defendants were negligent and breached their duty to exercise reasonable care in the operation of the Site.  Defendants' negligence included, but was not limited to the following:

      a.   preventing the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area;

      b.   failing to adequately train and supervise their employees and agents with regard to proper procedures to prevent the release and spread of toxic and

dangerous substances, contaminants, and hazardous materials from the Site into the Class Affected Area;

c. failing to adequately warn of the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area; and

d. otherwise using reasonable care in the operation of the Site to prevent the escape of toxic and dangerous substances, contaminants, and hazardous materials from the Site to the Class Affected Area.

96. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiff Class Members' damages, injuries, harm, economic loss, and increased risk of harm, which they suffered and will continue to suffer

97. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable housing during the duration of the cleanup of the home and property;

incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

98.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a.   an order certifying the case as a class action;

    b.   an order appointing Plaintiffs as the Class Representatives of the Class;

    c.   an order appointing undersigned counsel and their firms as counsel for the Class;

    d.   compensatory damages;

    e.   post-judgment interest;

    f.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g.   an award of taxable costs; and,

    h.   any and all such further relief as this Court deems just and proper.

**COUNT V
NEGLIGENCE PER SE FOR VIOLATION OF FLORIDA AIR AND
WATER POLLUTION ACT, FLORIDA STATUTES SECTION 403.011 *ET
SEQ*., AND/OR FLORIDA'S WATER QUALITY ASSURANCE ACT,
FLORIDA STATUTES SECTION 376.30, *ET SEQ.***

99.    Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

100.   At all times relevant hereto, Defendants had a duty to comply with Florida Air and Water Pollution Act, § 403.011, *et seq.,* Florida Statutes, and/or Florida's Water Quality Assurance Act, § 376.30, *et seq.,* Florida Statutes.

101.   As a result of the acts and omissions by Defendants alleged herein and Defendants allowing and causing contamination within the Class Affected Area by toxic and dangerous substances, contaminants, and hazardous materials, Defendants breached their duty to comply with the Florida Air and Water Pollution Act, § 403.011, *et seq.,* Florida Statutes, and/or Florida's Water Quality Assurance Act, § 376.30, *et seq.,* Florida Statutes and violated the aforementioned statutes.

102.   Plaintiff and the Class Members are members of the class of people that the Florida Air and Water Pollution Act, § 403.011, *et seq.,* Florida Statutes, and/or Florida's Water Quality Assurance Act, § 376.30, *et seq.* were designed to protect, and the harm suffered is of the type that the Acts were designed to prevent.

103.   Violations of the aforementioned Acts constitute negligence *per se*.

104.   As a direct and proximate cause of Defendants violating Florida Air and Water Pollution Act, § 403.011, *et seq.,* Florida Statutes, and/or Florida's Water Quality Assurance Act, § 376.30, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of

the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable housing during the duration of the cleanup of the home and property; incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

    a.   an order certifying the case as a class action;

    b.   an order appointing Plaintiffs as the Class Representatives of the Class;

    c.   an order appointing undersigned counsel and their firms as counsel for the Class;

    d.   compensatory damages;

    e.   post-judgment interest;

    f.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g.   an award of taxable costs; and,

    h.   any and all such further relief as this Court deems just and proper.

<u>**COUNT VI**</u>
<u>**TRESPASS**</u>

105.   Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

106.   Plaintiffs' and Class Members own or have a possessory interest in homes and real property in the Class Affected Area.

107.    Defendants' actions in the operations of the Site were intentional, negligent, reckless, or as the result of an extrahazardous activity, and proximately responsible for the contamination in the Class Affected Area as set forth herein.

108.    Defendants, without the consent or authority and against the will of the Plaintiffs and Class Members, caused hazardous substances to enter and contaminate Plaintiffs and Class Members' homes and properties in the Class Affected Area as a result of Defendants' acts and omissions at the Site as set forth herein.

109.    Defendants' trespass was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiff Class Members' damages, injuries, harm, economic loss, and increased risk of harm, which they suffered and will continue to suffer

110.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable housing during the duration of the cleanup of the home and property; incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

111.   Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a.   an order certifying the case as a class action;

b.   an order appointing Plaintiffs as the Class Representatives of the Class;

c.   an order appointing undersigned counsel and their firms as counsel for the Class;

d.   compensatory damages;

e.   post-judgment interest;

f.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g.   an award of taxable costs; and,

h.   any and all such further relief as this Court deems just and proper.

**COUNT VII**
**VIOLATION OF FLORIDA'S WATER QUALITY ASSURANCE ACT § 376.30, *ET SEQ.*, FLORIDA STATUTES**

112.   Plaintiffs and the Class Members adopt and restate paragraphs 1-64 as if fully set forth herein.

113.   As set forth herein, Defendants acts and omissions on the Site caused discharge, pollution, spilling, leaking, seeping, pouring, emitting and/or dumping of the hazardous chemicals, contaminants and pollutants into the Site that have affected the Class Affected Area.

114.   Pursuant to section 376.313(3), Florida Statutes, Plaintiffs and Class Members have a private cause of action against Defendants, "for all damages resulting from a discharge or other

condition of pollution covered by ss. 376.30-376.317." See *Curd v. Mosaic Fertilizer, LLC,* 39

So. 3d 1216 (Fla. 2010).

115.   Pursuant to Florida Statutes section 376.205,

> The remedies in this act shall be deemed to be cumulative and not exclusive. Nothing in this act shall require pursuit of any claim against the fund as a condition precedent to any remedy against a responsible party. Notwithstanding any other provision of law, **<u>any person may bring a cause of action against a responsible party in a court of competent jurisdiction for damages, as defined in s. 376.031, resulting from a discharge or other condition of pollution covered by ss. 376.011-376.21.</u>** In any such suit, it shall not be necessary for the person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it occurred. The only defenses to such cause of action shall be those specified in <u>s. 376.12(7)</u>. The court, in issuing any final judgment in such action, may award costs of litigation, including reasonable attorney's and expert witness fees, to any party, whenever the court determines such an award is in the public interest.

(Emphasis supplied).

116.   Defendants are a "responsible party" as defined by Florida Statutes section 376.031(20)(b).

117.   Plaintiffs and Class Members are a "person" as defined by Florida Statutes section 376.031(14).

118.   Defendants' discharge of dioxin and dioxin-like compounds, arsenic, polycyclic aromatic hydrocarbon, and benzo(a)pyrenes, among other hazardous substances, to the Affected Class Area, constitutes "discharge or other condition of pollution."

119.   Under the Water Quality Assurance Act, "discharge" is defined as including, but not limited to "any spilling, leaking, seeping, pouring, emitting and/or dumping which occurs within the territorial limits of the state and affects lands and waters within the territorial limits of the

state." Fla. Stat. § 376.031(7).  Defendants' acts and omissions, as set forth herein, constituted a "discharge" into the Class Affected Area.

120.   The Class Affected Area is within the territorial limits of the state and includes waters within the territorial limits of the state.

121.   Under the Water Quality Assurance Act, "pollution means the presence in the outdoor atmosphere or waters of the state of any one or more substances or pollutants in quantities which are or may be potentially harmful or injurious to human health or welfare, animal or plant life, or property or which may unreasonably interfere with the enjoyment of life or property including outdoor recreation."   Fla. Stat. § 376.031(17).

122.   Defendants' discharge of dioxin and dioxin-like compounds, arsenic, polycyclic aromatic hydrocarbon, and benzo(a)pyrenes, among other hazardous substances, to the Affected Class Area, constitute "pollution" as defined by Florida Statutes section 376.031(17).

123.   As a direct and proximate result of Defendants' violating the Water Quality Assurance Act Plaintiffs and Class Members have incurred damage within the meaning of Florida Statutes section 376.021(5) and are entitled to recover monetary damages for: the creation, and funding by Defendants, of a comprehensive community property remediation program to alleviate, remediate, and remove contamination in the Class Affected Area, including Plaintiffs and Class Members' homes; if Plaintiffs and Class Members' homes and property are unable to be cleaned to remove contamination from the homes and property, compensatory damages for the replacement/repair of their homes; environmental cleaning of their property; loss of use and enjoyment of the home and property; loss in value of the home due to the stigma attached from the presences of hazardous substances in the home and property; permanent diminution in value of the home and property; moving expenses; damage to personal property; renting of comparable

housing during the duration of the cleanup of the home and property; incidental and consequential damages for the cost of moving and/or the same due to cleanup of the home and property due to the hazardous substances and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a.   an order certifying the case as a class action;

    b.   an order appointing Plaintiffs as the Class Representatives of the Class;

    c.   an order appointing undersigned counsel and their firms as counsel for the Class;

    d.   compensatory damages;

    e.   post-judgment interest;

    f.   an award of attorneys' fees to class counsel based upon a common fund theory, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g.   an award of taxable costs, expert witness fees; and,

    h.   any and all such further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs individually and on behalf of the Class Members demand a trial by jury as to all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court this 6th day of October 2010, by using the CM/ECF system which will send notice of electronic filing to all parties of record.

By: _____/s/ Ervin A. Gonzalez_____

Ervin A. Gonzalez
Florida Bar Number 500720
Patrick S. Montoya
Florida Bar Number 0524441
**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
Email: Ervin@colson.com
Email: Patrick@colson.com


Jordan L. Chaikin
Florida Bar Number 0878421
**PARKER WAICHMAN ALONSO LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
Email: jchaikin@yourlawyer.com


**ATTORNEYS FOR PLAINTIFFS**