## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE, DIVISION

---

MARIA PARSONS and MICHAEL PARSONS,
MARY ANN JONES and JAMES ARTHUR
JONES, SR., SHANTELL SHAMEA JONES,
Individually, and as the Parent and Natural
Guardian of CARLOS UDAE STEPHENSON,
AARON JONES STEPHENSON, and OZIAH
CARSON JONES, Minor Children, SANDRA
WATTS KENNEDY and KEVIN KENNEDY,
Individually, and as the Parents and Natural
Guardians of MURIELLE KEELY KENNEDY, a
Minor Child, and FARINDA OSTEEN,
Individually and on Behalf of a Class of Persons
who are Similarly Situated,

      Plaintiffs,

v.                                CASE NO. 1:10-cv-00071-MP-GRJ

KOPPERS INC., f/k/a KOPPERS INDUSTRIES,
INC., BEAZER EAST, INC., f/k/a KOPPERS
COMPANY, INC., KOPPERS HOLDINGS INC.,
and BEAZER LIMITED,

      Defendants.

---

## MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS AND PRAYERS FOR RELIEF AND MEMORANDUM IN SUPPORT

---

Defendants Koppers Inc. ("Koppers") and Beazer East, Inc. ("Beazer"),
respectfully move this Court to dismiss plaintiffs' amended complaint pursuant to Fed. R.
Civ. P. 12(b)(6). Plaintiffs' amended complaint is replete with sweeping and conclusory
allegations, and plaintiffs fail to allege meaningful *facts* supporting each plaintiff's
purported cause of action against each defendant. Plaintiffs' boilerplate approach to

pleading is the very type of practice that the U.S. Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Further, plaintiffs' purported negligence *per se* claim fails for the additional reason that plaintiffs allege, in conclusory fashion, violations of statutes that are designed to protect the general public instead of a particular class of people.  Plaintiffs' claim for medical monitoring, the establishment of a property remediation program and other injunctive relief should be dismissed because plaintiffs have failed to make a *prima facie* case for any equitable relief, much less provided the Court with any legal justification for requiring defendants to create and fund medical monitoring and property remediation programs.  Finally, plaintiffs' claim for violation of Florida's Water Quality Assurance Act should be dismissed because plaintiffs have not sufficiently alleged the requisite nexus between defendants' alleged conduct and surface or groundwater pollution, and they failed to allege that any alleged discharge violated any standard set by the Florida Department of Environmental Protection ("FDEP").

Alternatively, the Court should strike plaintiffs' class action allegations pursuant to Fed. R. Civ. P. 12(f) for plaintiffs' failure to file a motion for class certification within ninety days of filing this action, as required by Local Rule 23.1(B).  The Court should likewise strike all references in the amended complaint to the Pollutant Discharge Prevention and Control Act.  Defendants submit the following memorandum of law in support of this motion.

**MEMORANDUM OF LAW**

**INTRODUCTION AND SUMMARY**

In this putative class action, a disparate group of alleged current and former residents of Gainesville, Florida, including property owners, tenants and minors, purport to assert nuisance, trespass, negligence, negligence *per se*, medical monitoring, strict liability and statutory claims based on the alleged emission of chemicals and dust during and after commercial wood treatment and charcoal/wood oil production operations conducted at a Superfund site ("the Site") that has been monitored and regulated by the U.S. Environmental Protection Agency for decades.  Plaintiffs' original complaint named three defendants – Koppers, Beazer and Cabot Corporation – each of whom owned and operated a portion of the Site at different times and conducted different operations.  In their amended complaint ("Complaint"), plaintiffs have dropped Cabot Corporation and added as defendants Koppers Holdings Inc. and Beazer Limited.[1]  Plaintiffs do not allege that they have suffered any personal injury.  In fact, plaintiffs specifically disavow "relief or remedy for any present physical injury or disease . . . nor do they assert that they have, in their body, dangerous levels or dosages of" any toxic substance.  (Doc. 22 at ¶ 52).  Rather, plaintiffs seek millions of dollars in alleged damages for one or more of the following disparate injuries:  Diminished property value, loss of use and enjoyment of property, annoyance and inconvenience, and stigma.[2]

---

[1] Neither Koppers Holdings Inc. nor Beazer Limited have been served with the amended complaint.  They have not joined in this motion.

[2] The proposed "class affected area" is a two mile radius around the Site (Doc. 22 at ¶ 6) – a diverse area which would include the County and Federal courthouses, the main library at the University of Florida, the western edge of Gainesville Regional Airport and part of Ironwood Golf Club.

The Complaint is fundamentally deficient on several grounds.  As the factual predicate for each claim, plaintiffs generically reference "[p]oor waste handling practices" and allege, in conclusory fashion, that defendants "caused and/or allowed the toxic and dangerous substances, contaminants, and hazardous materials . . . to leave the Site and enter" the alleged class affected area.  (Doc. 22 at ¶¶ 4, 45).  Plaintiffs do not allege <u>any</u> facts explaining how each defendant's conduct was wrongful, when that conduct occurred, or how it impacted each plaintiff or his property.  Rather, the Complaint treats all defendants as the same.

Plaintiffs also fail to allege whether and how they or their respective properties were impacted by operations at the Site (if at all) or, for those plaintiffs who do not even own property, what facts purportedly give rise to any claim for relief.  The Complaint does not describe how each plaintiff was harmed, when that alleged harm occurred, or what caused the alleged harm.  Although the Complaint refers to alleged testing of soil and indoor dust at properties located within the "class affected area," plaintiffs fail to identify the location of the properties tested or the concentration of any alleged exposures compared to naturally occurring background levels in the environment.  Plaintiffs' allegations thus fail to satisfy the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*.

Further, plaintiffs' purported negligence *per se* claim fails for the additional reason that plaintiffs allege, in conclusory fashion, violations of statutes that were designed to protect the general public instead of a particular class of people.  Plaintiffs' claim for medical monitoring and other injunctive relief also fails because plaintiffs have

failed to allege a *prima facie* case for any equitable relief, much less provided the Court with any legal justification for requiring defendants to create and fund medical monitoring and property remediation programs. Finally, plaintiffs' claim for violation of Florida's Water Quality Assurance Act should be dismissed, as plaintiffs have not sufficiently alleged the requisite nexus between defendants' alleged conduct and surface or groundwater pollution or that any discharge violated any standard set by the FDEP. For all these reasons, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively, the Court should strike two groups of allegations pursuant to Fed. R. Civ. P. 12(f). First, because plaintiffs failed to move for class certification within ninety days of filing this action, paragraphs 1-2, 5-7, and 59-65 of the Complaint, and paragraphs A and B of plaintiffs' request for relief in Count I and paragraphs A through C of plaintiffs' request for relief in Counts II-VII, should be stricken pursuant to Local Rule 23.1(B). As of the date of this motion, more than 200 days have passed since plaintiffs commenced this action, and plaintiffs have failed to move for class certification. Plaintiffs' inattention to this Court's rules demonstrates they are not adequate class representatives. This Court should follow the prior decisions of this and other courts and strike plaintiffs' class allegations.

Second, to the extent the Court determines that plaintiffs have stated a claim for violation of Florida's Water Quality Assurance Act, the references to the Pollutant Discharge Prevention and Control Act found in paragraphs 115-117 and 121-123 of the complaint should be stricken. The Pollutant Discharge Prevention and Control Act is

separate and distinct from the Water Quality Assurance Act, and it applies only to pollution of State water or coastline property. Plaintiffs have not raised allegations of impact on State water or coastline property. References to that statute are immaterial and should be stricken.

## ARGUMENT

**A.** **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THEIR COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).**

### 1.    Applicable pleading standard.

Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, a complaint could not be dismissed for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Twombly* "retired" *Conley's* "no set of facts test" and emphasized that the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the plaintiff must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Court re-emphasized that "[a] claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added). Complaints must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The mere possibility that a defendant acted unlawfully, or the existence even of factual allegations that are consistent with the

defendant's liability, are insufficient to survive a motion to dismiss. *Id.* And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Only where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009).

To state claims for strict liability, negligence, nuisance and trespass in the context of an action for environmental contamination, a plaintiff must allege specific facts showing that the defendant caused physical harm to his/her property. A plaintiff cannot state such claims merely by alleging that his/her property has decreased in value. *The St. Joe Co. v. Leslie*, 912 So. 2d 21, 24-25 (Fla. Dist. Ct. App. 2005). Consistent with this approach, while considering a claim for alleged property damage and personal injuries arising from radiation exposure, this Court recently confirmed that pleadings which generically allege exposure, without any specific facts regarding the level of the plaintiff's exposure or manner in which the defendant's conduct caused the exposure, fail the *Twombly* and *Iqbal* standards. *See Calhoun v. U.S.*, No. 3:09-cv-268/MCR/MD, 2010 WL 3277652, at *13-15 (N.D. Fla. June 30, 2010).

**2. Plaintiffs fail to allege any facts regarding the nature of each defendant's alleged misconduct or the resultant harm suffered by plaintiffs.**

Plaintiffs purport to seek relief against multiple defendants, each of whom owned a portion of the Site at different times and conducted different operations during its

period of ownership. Despite these important distinctions in each defendant's involvement with the Site,[3] plaintiffs lump the defendants together and make no attempt to differentiate the nature of their alleged claims against each defendant. For example, plaintiffs generically allege that defendants "acquired, managed, and/or operated" wood treatment operations at the Site "and related and subsequent operations and activities at the Site." (Doc. 22 at ¶¶ 20, 41). Plaintiffs further allege, without providing any details as to each defendant's alleged misconduct, that defendants' operations at the Site "caused and/or allowed the toxic and dangerous substances, contaminants, and hazardous materials . . . to leave the Site and enter" the alleged class affected area. (Doc. 22 at ¶ 45).

Plaintiffs also fail to allege any facts suggesting that they personally have suffered property damage or any other injury – such as facts showing that their respective properties were physically impacted by chemical emissions from the Site or, for those plaintiffs who have never owned property, explaining what injury they allegedly suffered. Instead, plaintiffs merely allege that an unspecified "sample of residences in the Class Affected Area" was tested and that "Plaintiffs' real property is contaminated." (Doc. 22 at ¶ 48). Plaintiffs further allege that samples of indoor household dust taken in January 2010 contained elevated dioxin concentrations. (Doc. 22 at ¶ 49). There is no allegation as to which properties were tested, what chemicals to which plaintiffs and/or their properties purportedly were exposed or the concentration of those exposures compared to

---

[3] As reflected in plaintiffs' original complaint, there is a third entity (Cabot Corporation) that conducted even more disparate operations at the Site, and plaintiffs have tried to remedy their deficient allegations simply by dismissing Cabot from this action. However, to the extent that Cabot contributed to the alleged property contamination, as plaintiffs have contended it did, Cabot's operations at the Site remain relevant.

naturally occurring background levels in the environment. Absent specific factual allegations that plaintiffs and their respective properties have been physically affected by a specific defendant during the time that plaintiffs owned or resided on those properties, plaintiffs cannot state claims for strict liability, negligence, negligence *per se*, nuisance or trespass.

Since *Twombly* and *Iqbal*, several federal courts have concluded that pleadings which collectively reference "defendants," and do not allege facts to support a claim of injury, fail the *Twombly* and *Iqbal* standards. In this case, the Complaint does not set forth sufficient factual detail describing how and when each of the defendants allegedly caused harm to plaintiffs. Consequently, plaintiffs have failed to comply with *Twombly* and *Iqbal*, and the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1162-63 (S.D. Fla. 2009) (dismissing negligence and strict products liability claims because plaintiffs made "no individualized allegations" against each defendant and, therefore, failed to allege how each defendant's alleged conduct harmed them); *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (noting that, "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding plaintiff's undifferentiated allegations concerning "defendants" did not comply with *Twombly* and *Iqbal*"); *In re Travel Agent Comm'n Antitrust Lit.*, 583 F.3d 896, 905 (6th Cir. 2009) (holding

plaintiffs' "vague allegations" about "defendants" or "defendants' executives" did not comply with *Twombly* and failed to give adequate notice of each defendant's alleged misconduct); *Premier Assocs., Inc. v. EXL Polymers, Inc.*, No. 1:08-cv-3490-WSD, 2010 WL 2838497, at *7 (N.D. Ga. July 19, 2010) (dismissing claim when claimant failed to identify damaged property with sufficient detail); *Voggenthaler v. Md. Square, LLC*, No. 2:08-cv-1618-RCJ-GWF, 2010 WL 2998253, at *5-6 (D. Nev. July 22, 2010) (dismissing claim because plaintiff failed to allege sufficient facts showing harm from defendant's conduct); *Farash v. Cont'l Airlines*, 337 Fed. Appx. 7, 9 (2d Cir. 2009) (holding plaintiff failed to state negligence claim because he did not specify "in what manner he was injured [and] how the [defendant] was negligent").

Like in the cases cited above, plaintiffs here make no effort to delineate the nature of each defendant's alleged harmful conduct and its alleged impact on them or their respective properties. Even construed in the most favorable light toward plaintiffs, the Complaint merely alleges that each of the defendants owned and operated a portion of the Site at some point in time, and chemicals allegedly migrated from the Site at some unspecified time onto properties located within a two mile radius of the Site. These allegations fall well short of the *Twombly* and *Iqbal* pleading standards. They fail to specify the nature of each defendant's alleged misconduct or indicate when that alleged misconduct may have occurred or impacted each plaintiff. Accordingly, the Court should dismiss the Complaint.

### 3.    Plaintiffs fail to state claims for negligence *per se*.

Plaintiffs' negligence *per se* claim relies on unspecified violations of the Florida Water Quality Assurance Act ("WQAA") and Air and Water Pollution Act ("AWPA"). (Doc. 22 at ¶¶ 99-104).  Plaintiffs' reliance on those statutes is dubious.  The WQAA and AWPA are designed to protect the environment and general public in the State of Florida and not a particular class of people of which plaintiffs claim to be members.  Florida law does not provide a cause of action for negligence *per se* when the statute that the defendant allegedly violated is not designed to protect a particular class of people.  Therefore, plaintiffs fail to state a claim for negligence *per se*, and the Court should dismiss that claim.

In Florida, a statutory violation constitutes negligence *per se* in only two limited circumstances:  (1) if the statute is designed to protect a particular class of persons who are unable to protect themselves; or (2) if the statute establishes a duty to take precautions to protect a particular class of persons from a particular type of harm.  Any other alleged statutory violation constitutes mere evidence of negligence.  *deJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973).  Accordingly, when a plaintiff alleges that the defendant violated a statute designed to protect the general public, rather than a particular class of people, he cannot maintain a claim for negligence *per se* based on that violation.  *See, e.g.*, *Chevron USA, Inc. v. Forbes*, 783 So. 2d 1215, 1219-20 (Fla. Dist. Ct. App. 2001).

Despite plaintiffs' unsupported allegations to the contrary (Doc. 22, ¶ 102), the WQAA and AWPA are not designed to protect a particular class of people.  Instead,

those statutes are designed to protect the general public. The WQAA seeks to preserve surface and ground waters in the State of Florida. When it enacted the WQAA, the Florida legislature declared that "[s]pills, discharges, and escapes of pollutants . . . and hazardous substances . . . pose threats of great danger and damage to the environment of the state, to citizens of the state, and to other interests deriving livelihood from the state." FLA. STAT. § 376.30(2)(b) (2010). When it enacted the AWPA, the legislature similarly declared that "pollution of the air and waters of this state constitutes a menace to public health and welfare" and specifically stated "the provisions of this act are enacted in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state." FLA. STAT. § 403.021(1),(5).

Because the WQAA and AWPA are designed to protect the general public, plaintiffs cannot rely on alleged violations of those statutes to state a claim for negligence *per se*. The Court should dismiss plaintiffs' negligence *per se* claim.

### 4. Plaintiffs fail to state a claim for violation of Florida's Water Quality Assurance Act.

Plaintiffs' claim for violation of the Florida Water Quality Assurance Act ("WQAA") alleges that airborne emissions from the Site contaminated their property. (Doc. 22 at ¶¶ 46, 49 113, 118.) Plaintiffs claim that they are exposed to "toxic and hazardous substances at levels exceeding normal background levels," but do not allege that any discharge from the Site violated any standard of the FDEP and caused a particular injury to them. Because Plaintiffs (a) have not sufficiently alleged any nexus between defendants' alleged conduct and surface or groundwater pollution, and (b) failed

to allege that any discharge violated any FDEP standard, they have failed to state a claim

for violation of the WQAA and the Court should dismiss that claim.

> **a.** **The private cause of action created by the Water Quality Assurance Act does not apply absent a nexus between defendants' alleged conduct and pollution of surface or groundwater.**

Plaintiffs' reliance on the WQAA to redress alleged "indoor household dust"

contamination is misplaced. The Florida Legislature enacted the WQAA in 1983 to

protect Florida's surface and groundwater from pollution; the WQAA has no application

to indoor dust. The Legislature specifically declared that:

> [T]he preservation of surface and groundwater is a matter of the highest urgency and priority, and that such use can only be served effectively by maintaining the quality of inland waters as close to a pristine condition as possible.

FLA. STAT. §376.30(1) (1984 Supp.).[4] This expression of the Legislature's original intent

remains today. See FLA. STAT. ANN. §§ 376.30(1)(b)-(c), 376.30(4) (West 2010).

The Florida Supreme Court has held that Section 376.313(3) creates a private

cause of action that "allows private parties to sue for damages 'resulting from a discharge

or other condition of pollution covered by ss. 376.30-376.319.'" *Aramark Uniform and*

*Career Apparel, Inc. v. Easton*, 894 So .2d 20, 22 (Fla. 2004). Consistent with the stated

purpose of the WQAA, the private cause of action created by Section 376.313(3) is only

available where there is some nexus between the defendant's alleged conduct and

pollution of "surface and ground waters." *See Curd v. Mosaic Fertilizer, LLC,* 39 So. 3d

1216, 1220 n.1 (Fla. 2010) (noting that Section 376.313 "provides for individual causes

---

[4] The WQAA, enacted in 1983 in Chapters 83-310, Laws of Florida, is currently codified in FLA. STAT. ANN. §§376.30-376.318.

of action for pollution of surface and ground waters").   Indeed, the Florida Supreme Court has upheld Section 376.313(3) claims on only two occasions, each involving claims of surface or groundwater contamination.   *See Aramark,* 894 So. 2d at 21 (complaint alleged that chemical solvents on defendant's property had seeped into the groundwater and then migrated onto plaintiff's property, contaminating plaintiff's soil and groundwater); *Curd,* 39 So. 3d at 1218 (complaint alleged that wastewater storage tank on defendant's property overflowed, causing pollutants and hazardous chemicals to spill into Tampa Bay).

Plaintiffs do not sufficiently allege the requisite nexus between defendants' alleged conduct and surface or groundwater contamination.   Instead, Plaintiffs allege that their properties and "indoor household dust" have been contaminated "through airborne transport from the Site."   (Doc. 22 at ¶¶ 46, 49.)   Perhaps recognizing that these allegations are not sufficient to state a claim under the WQAA, Plaintiffs include in the complaint two vague, almost throw-away sentences regarding water.   *See* Doc. 22 at ¶ 47(e) ("upon information and belief, waterborne transport of toxic and hazardous materials through runoff from the Site has resulted in some off-site contamination of the Class Affected Area"); Doc. 22, ¶4 ("Poor waste handling practices by Koppers Inc. and its predecessors resulted in contaminated ground water and soil.").   These bare-boned allegations do not meet the *Twombly* and *Iqbal* pleading standards.   Plaintiffs do not include allegations of any meaningful facts regarding how and when any alleged "runoff" from the Site occurred, what "toxic and hazardous materials" migrated from the Site through "waterborne transport," or the location and levels of any alleged groundwater

contamination.   In fact, plaintiffs do not allege that any water on their respective properties has ever been contaminated.   Absent any sufficiently alleged nexus between defendants' alleged conduct and surface or groundwater contamination, plaintiffs have failed to state a claim under the WQAA.

### b.   Plaintiffs have not alleged any discharge in violation of any FDEP standards.

Even if the WQAA applied to plaintiffs' claims for alleged household dust contamination – which it does not – plaintiffs have still failed to state a claim for relief under that statute because they have not alleged that any emissions from the Site exceeded any standard set by the FDEP.   The WQAA prohibits the "discharge [of] pollutants or hazardous substances into or upon the surface or ground waters of the state or lands, **which discharge violates any departmental 'standard.'**"[5]   FLA. STAT. ANN. §376.302(1)(a) (West 2010) (emphasis added).   Here, Plaintiffs merely allege that they have been exposed to "toxic and hazardous substances at levels exceeding normal background levels."   (Doc. 22, ¶ 52.)   This is not sufficient to state a claim under the WQAA.

In *The St. Joe Company v. Leslie*, 912 So. 2d 21 (Fla. Dist. Ct. App. 2005), for example, the plaintiffs brought a class action complaint, including a section 376.313 claim, alleging that pollution from paper mill waste products caused soil and water contamination in the defined class area.   In reversing the trial court's certification of the

---

[5] "Standard" is defined as "any rule of the Department of Environmental Protection relating to air and water quality, noise, solid-waste management, and electric and magnetic fields associated with electrical transmission and distribution lines and substation facilities."   It does not include "rules . . . which relate exclusively to the internal management of the department, the procedural processing of applications, the administration of rulemaking or adjudicatory proceedings, the publication of notices, the conduct of hearings, or other procedural matters."   FLA. STAT. ANN. § 403.803.

class, the appellate court noted that plaintiffs could not prevail on their section 376.313 claim in the absence of "evidence that the waste, which the class representatives saw being dumped, exceeded DEP's standards." *The St. Joe Co.*, 912 So. 2d at 25. Like the plaintiffs in *St. Joe*, plaintiffs here have failed to allege that any emission from the Site violated any FDEP standard. Thus, plaintiffs' claim for violation of Florida's Water Quality Assurance Act should be dismissed.

### 5. Plaintiffs fail to state a claim for medical monitoring and other "equitable and injunctive relief."

Plaintiffs seek money damages in this action. They claim that the amount in controversy exceeds five million dollars. (Doc. 22 at ¶ 36). Despite their request for millions of dollars in alleged damages, plaintiffs also request that the Court re-write Florida law by granting injunctive relief which would require defendants to create and fund comprehensive medical and environmental monitoring and property remediation programs. (Doc. 22 at ¶¶ 66-78, 84). Plaintiffs' claim for medical monitoring and other "equitable and injunctive relief" should be dismissed.

To state a claim for such injunctive relief, plaintiffs must, at a minimum, allege facts showing that they lack an adequate remedy at law and are at serious risk of continuing irreparable harm if the relief is not granted.[6] *Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005); *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999). Plaintiffs simply allege that they "are without adequate remedy at law" and "will suffer irreparable harm if the Court does not render the injunctive relief and medical

---

[6] It would be disingenuous for plaintiffs to contend that they are at serious risk of continuing irreparable harm as a result of wood treating operations at the Site, because those operations have been ceased for several months.

monitoring set forth herein," but plaintiffs do not allege a single <u>fact</u> supporting either of these necessary elements.  (Doc. 22, ¶¶ 67-68).  Plaintiffs are not excused from alleging such facts merely because they assert their claims as part of a putative class action.  *See, e.g., Drayton v. Western Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4-5 (11th Cir. Mar. 11, 2002) (holding putative class representatives not entitled to injunctive relief absent allegations of irreparable harm).  Therefore, plaintiffs have failed to state a *prima facie* claim for any equitable relief, and Count I of the complaint should be dismissed in its entirety.  *See County of Monroe v. Priceline.com, Inc.*, No. 09-10004, 2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009) (dismissing claim for injunctive relief).

Putting aside plaintiffs' failure to allege any facts warranting a request for injunctive relief, plaintiffs' purported medical monitoring claim does nothing more than recite the elements of a medical monitoring cause of action, without pleading any facts to support the claim.  To state a claim for medical monitoring, plaintiffs must plead facts showing: (1) exposure to a proven hazardous substance at greater than normal background levels; (2) the exposure was caused by the defendant's negligence; (3) the plaintiff has a significantly increased risk of developing a serious latent disease as a proximate result of the exposure; (4) a monitoring procedure exists that makes the early detection of the disease possible; (5) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (6) the prescribed monitoring regime is reasonably necessary according to contemporary scientific

principles. *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106-07 (Fla. Dist. Ct. App. 2000), *rev. denied*, 780 So. 2d 912 (Fla. 2001).

The Complaint lacks any meaningful factual allegations regarding plaintiffs' individual exposures and injuries. Plaintiffs do not allege any facts regarding their own purported exposures to "proven hazardous substances" or the concentrations of those exposures compared to normal background levels. Plaintiffs also do not allege any facts regarding the manner in which those purported exposures occurred or identify any negligent act of any defendant which allegedly caused their individual exposures. Finally, plaintiffs do not advocate a monitoring regime that would be any different from routine medical treatment or would be reasonably necessary for early detection of specific diseases. The allegations in plaintiffs' medical monitoring claim constitute nothing more than legal conclusions which recite the elements for medical monitoring under Florida law. (*See* Doc. 22, ¶¶ 71-78). As specifically recognized by the Supreme Court in *Twombly* and *Iqbal*, such allegations are insufficient. *See, e.g.*, *Suarez v. Playtex Prods., Inc.*, No. 08 C 2703, 2009 WL 2212315, at *4 (N.D. Ill. July 24, 2009) (holding plaintiffs not entitled to medical monitoring absent allegations of actual exposure and showing that monitoring is necessary); *see also Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 661-62 (M.D. Fla. 2001); *Zehel-Miller v. Astrazenaca Pharm. LP*, 223 F.R.D. 659, 664 (M.D. Fla. 2004); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 270-73 (S.D. Fla. 2003).[7]

---

[7] In addition, Florida law is by no means settled that medical monitoring is a cognizable cause of action. The Florida Supreme Court has never spoken on the issue. Given this lack of guidance from the Florida Supreme Court, plaintiffs' failure to plead meaningful facts in support of this claim for relief is even more problematic. Even if the Florida Supreme Court were to recognize this cause of action, defendants submit

Finally, plaintiffs' request for a property remediation program is particularly inappropriate considering the logistical and practical nightmare inherent in establishing such a program.  Plaintiffs offer no guidance regarding the scope and mechanics of their requested relief.  For example, there are no allegations in the complaint regarding how the program would be funded, who would administer the program, who would be entitled to participate in the program, what standards would be used to determine eligibility for the program, what evidence would be necessary to prove eligibility for the program, who would be authorized to evaluate that evidence and determine whether potential participants qualify for participation, what standards would be used to determine when a qualified property has been remediated, or who would be authorized to make that determination.

Considering this limited sample of the logistical questions and complications that would accompany establishing a property remediation program, it is not surprising that no Florida court has recognized ongoing property monitoring as permissible relief.  In fact, the only state supreme court to address a claim for such relief has directly rejected it. *See, e.g.*, *Carter v. Monsanto Co.*, 575 S.E.2d 342, 345-46 (W. Va. 2002) (rejecting putative class representative's request for injunction requiring chemical company and landfill owners to conduct testing to determine if the class members' property had been damaged by exposure to dioxin, holding that "there is no common law cause of action in West Virginia for property monitoring"); *State ex rel. E.I. Dupont De Nemours & Co. v.*

---

that Florida law at least would require more particularized pleading than what plaintiffs allege here. Because plaintiffs have not alleged sufficient facts which support their request for a medical monitoring program, the Court should dismiss that claim.

*Hill*, 591 S.E.2d 318, 326-27 (W. Va. Ct. App. 2003) (following *Carter* and rejecting plaintiffs' request for an injunction requiring defendant to test class members for chemical compounds); *see also Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 451-52 (E.D. Pa. 2000) (rejecting request to make defendants pay for testing of class members' vehicles).

Plaintiffs, in short, have not made a *prima facie* case for any equitable relief, much less stated a claim for medical monitoring or provided the Court with any legal justification for requiring defendants to create and fund a property remediation program. Plaintiffs' claim for medical monitoring and other injunctive relief should be dismissed.

**B.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH LOCAL RULE 23.1(B).**

Plaintiffs filed this action on April 20, 2010.  Pursuant to Local Rule 23.1(B), plaintiffs were required to move for class certification within ninety days after filing the complaint.  *See* N.D. Fla. Loc. R. 23.1(B).  As of the date of this motion, more than 200 days since plaintiffs' filed this action, plaintiffs have failed to move for class certification.  On October 6, 2010, plaintiffs filed a *nunc pro tunc* motion for extension of time to file a motion for class certification.  (*See* Doc. 23).  That motion does not adequately explain any excusable neglect or good cause for plaintiffs' failure to comply with Local Rule 23.1(B), and the Court should strike plaintiffs' class allegations.[8]

---

[8] Contemporaneous with the filing of the instant motion, Defendants are filing a response in opposition to plaintiffs' *nunc pro tunc* motion for extension of time to file a motion for class certification.  Defendants incorporate their response herein by reference.

**C.** **THE REFERENCES IN THE AMENDED COMPLAINT TO THE POLLUTANT DISCHARGE PREVENTION AND CONTROL ACT SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).**

Fed. R. Civ. P. 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  In the event the Court determines that Plaintiffs have stated a claim for relief under the WQAA, the references to the Pollutant Discharge Prevention and Control Act contained in Paragraphs 115-117, 119 and 121-123 of the Amended Complaint should be stricken.

The Pollutant Discharge Prevention and Control Act ("PDPCA"), found in F.S.A. Sections 376.011-376.17 and 376.19-376.21, was enacted by the Florida Legislature in 1970 to protect Florida's <u>coastline</u> from oil spills.  *See* FLA. STAT. ANN. § 376.021 (West 2010) (stating "[l]egislative intent with respect to pollution of coastal waters and lands"); *Askew v. Am. Waterways Operators, Inc.,* 411 U.S. 325, 328 (1973) (noting the PDPCA "imposes strict liability for any damage incurred by the State or private persons as a result of an oil spill in the State's territorial waters"); Maloney, et al., FLORIDA WATER LAW at 418 (1980).  The Legislature specifically declared that "the highest and best use of the seacoast of this state is as a source of private and public recreation" and that "such use can only be served effectively by maintaining the coastal waters, estuaries, tidal flats, beaches, and public lands adjoining the seacoast in as close to a pristine condition as possible."  FLA. STAT. ANN. §376.021(1) and (2) (West 2010).  To that end, the PDPCA prohibits "[t]he discharge of pollutants into or upon any coastal waters, estuaries, tidal

flats, beaches, and lands adjoining the seacoast of the state." FLA. STAT. ANN. §376.041(1) (West 2010).

Plaintiffs cite to Section 205 of the PDPCA and reference several definitions from the PDPCA in the Amended Complaint. (*See* Doc. 22, at ¶¶115-117, 119, 121-123.) The cited provisions of the PDPCA have no bearing on this case, however, as plaintiffs are not claiming that any emissions from the Site polluted any State water or coastline.[9] Thus, even if the Court determines that plaintiffs have stated a claim under the WQAA, their references to the PDPCA are immaterial and should be stricken pursuant to Fed. R. Civ. Pro. 12(f).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint or, in the alternative, strike plaintiffs' class allegations and all references to the Pollutant Discharge Prevention and Control Act. Defendants further request any further and alternative relief that the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, the undersigned hereby certifies that counsel for defendants, Koppers Inc. and Beazer East, Inc., has conferred with counsel for plaintiffs in a good faith attempt to resolve by agreement the issues raised in defendants' Motion to Dismiss Amended Class Action Complaint or, in the alternative, to Strike Class Allegations and Prayers for Relief. During the course of said conference, counsel did not reach agreement regarding any of the issues raised in defendants' motion.

---

[9] It should not be lost on this Court that the proposed "class affected area" is as far inland as any point in Florida.

### REQUEST FOR ORAL ARGUMENT

Koppers and Beazer hereby request oral argument on the issues raised in this motion.  Defendants estimate that 45 minutes will be required for oral argument.

Date:   November 19, 2010                    Respectfully submitted,

                                             s/ Paul K. Freeborn

**OF COUNSEL:**                              Benjamin H. Hill, III (FBN 094585)
Robert L. Shuftan (ILBN 3124475)            bhill@hwhlaw.com
*Northern District Bar application to be*    Dennis P. Waggoner (FBN 509426)
*submitted*                                  dwaggoner@hwhlaw.com
shuftan@wildman.com                         HILL, WARD & HENDERSON P.A.
David A. Kanter (ILBN 6187653)              101 East Kennedy Blvd., Suite 3700
*Admitted to Northern District Bar 9/30/10*  P.O. Box 2231
kanter@wildman.com                          Tampa, FL 33602
Brent R. Austin (ILBN 6220501)              Phone: (813) 221-3900
*Admitted to Northern District Bar 9/29/10*  Fax: (813) 221-2900
austin@wildman.com
Paul K. Freeborn (ILBN 6277489)
*Admitted to Northern District Bar 10/28/10*
freeborn@wildman.com
Megan C. Millirons (ILBN 6290249)
*Admitted to Northern District Bar 9/29/10*
millirons@wildman.com
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, Suite 2800
Chicago, IL 60606
Phone: 312-201-2000
Fax: 312-201-2555

                                             **ATTORNEYS FOR DEFENDANTS
                                             KOPPERS INC. and BEAZER EAST,
                                             INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2010 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

s/ Paul K. Freeborn